UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Civil Action No. 7:11-CV-00169-BO

| | | |
|---|---|---|
| CHRISTINA LYNN JACOBS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' REPLY TO** |
| | ) | **PLAINTIFF'S MEMORANDUM** |
| | ) | **IN OPPOSITION TO** |
| N.C. ADMINISTRATIVE OFFICE | ) | **DEFENDANTS' MOTION** |
| OF THE COURTS, and JAN | ) | **FOR SUMMARY JUDGMENT** |
| KENNEDY in her official capacity as | ) | |
| NEW HANOVER COUNTY CLERK | ) | |
| OF SUPERIOR COURT, | ) | |
| Defendants. | ) | |

Defendants, N.C. Administrative Office of the Courts and Jan Kennedy, in her official capacity as New Hanover County Clerk of Superior Court, (hereinafter, "Defendants") moved the court to grant them summary judgment with respect to Plaintiff Christina Jacobs' claims that Defendants terminated her employment in violation of the Americans with Disabilities Act (hereinafter "ADA"), 42 U.S.C. 12101 *et seq.*

Plaintiff filed a memorandum in opposition to that motion. In their memorandum, Plaintiff asserts that Defendants engaged in a per se violation of the ADA by purportedly co-mingling medical information with Plaintiff's personnel file and seeks judgment as a matter of law as to that claim. Defendants did not brief this issue in their memorandum in support of their motion for summary judgment because the ADA's provisions relating to confidential medical information simply do not apply to the facts in this case or even to the facts as set forth in the Plaintiff's memorandum.

In any case, Plaintiff's misinterpretation of Section 12112(d) of the ADA is a last-ditch

attempt to create a violation of the ADA so as to deny Defendants' Motion for Summary Judgment. It is also a transparent attempt to avoid the facts and law that demonstrate that summary judgment is appropriate for Defendants.

## INTRODUCTION

Plaintiff begins her reply with the assumption that it is uncontroverted that she has social anxiety disorder and that the employees in the Clerk's office, including Plaintiff's supervisors and the Clerk herself, knew this from May 5, 2009 forward. Even if it is assumed for the sake of the summary judgment motion that Plaintiff has social anxiety disorder, there is no evidence that that Defendants knew that Plaintiff considered herself to be disabled or that she took adequate efforts to identify herself as a disabled person in such a way as to impose an a duty on Defendants to engage in a conversation with her about necessary accommodations. There is also no evidence that her disorder caused the inadequate performance for which she was ultimately discharged or that it in any way precluded her from doing her job from May to September in such a way that she could have avoided termination for the behavior for which she was terminated.

Plaintiff simply has not provided any evidence, nor created any genuine issue of material fact, to support her claim that the Clerk terminated her because of her disability. Plaintiff relies solely on the timing of her September email to the Clerk. There is a dispute as to whether Clerk Tucker had printed out or read the email prior to terminating Plaintiff on September 29, 2009, but there is no dispute whatsoever about the fact that Clerk Tucker had decided to terminate the Plaintiff well before September 29, 2009. Thus, summary judgment is appropriate in this matter.

I. **NO CONFIDENTIAL MEDICAL INFORMATION EXISTED IN PLAINTIFF'S PERSONNEL FILE AND AS SUCH NO PER SE VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OCCURRED.**

2

Plaintiff's "Hail Mary" attempt to assert that Defendants violated the confidentiality provisions of the ADA, 42 U.S.C. § 12112(d), by purportedly co-mingling medical information in Jacobs personnel file is without merit. Even a cursory review of the plain language of the statute shows that § 12112(d) is totally inapplicable to the facts in this case.

The plaintiff's basis for this claim is that the Clerk, Brenda Tucker, placed a handwritten note about the Plaintiff in the Plaintiff's personnel file which she wrote during a telephone conversation with Debbie Excell. (Ex. 11; Pl. Ex. 5) A review of § 12112 shows that the only reference to "medical examinations and inquiries" is contained in subparagraph (d).[1]

The section that Plaintiff contends Defendants' violated is in 42 U.S.C. § 12112(d)(3) which concerns "entrance examination[s]." That paragraph provides in (B) that medical information "obtained regarding the medical condition of history of the applicant" must be "maintained on separate forms and in separate medical files and is treated as a confidential medical record." *Id.* However, the preamble to this subparagraph makes it clear that this section is only applicable to a "medical examination" required "after an offer of employment has been made to a job applicant and prior to the commencement of the employment duties of such applicant." *Id. See also Wiggins v. DaVita Tidewater, LLC,* 451 F.Supp. 2d 789, 801 (E.D. Va. 2006) (quoting *Rohan v. Networks Presentation LLC,* 175 F. Supp. 2d 806, 813 (D. Md. 2001)) ("[a]fter an employee has begun working, an employer may not require a medical examination nor make inquiries into an employee's disability unless the exam or inquiry is shown to be 'job-related and consistent with business necessity.'") Clearly, this section is not applicable to disclosures of medical information by employees to employees made voluntarily.

---

[1] Subparagraphs (d)(2)-(4) govern the parameters of permissible examinations and inquiries by employers. Subparagraph (2) deals with preemployment examinations and inquiries; (3) with employment entrance examinations; and (4) examinations and inquiries during employment.) Plaintiff raises no claim under (d)(2) (preemployment) or (d)(4) (during employment).

The Defendants in this case only received information from Plaintiff; they never sought it. In *Rohan v. Networks Presentation LLC,* the Court identified two ways that an employer may obtain disability information from their existing employees pursuant to the ADA, 42 U.S.C. § 12112(d)(4)(B). 175 F. Supp. 2d at 813 (D. Md. 2006). Employers are permitted to gather information about a current employee's disability by conducting voluntary medical examinations, including voluntary medical histories, which are part of an employee health program, and employers may 'make inquiries into the ability of an employee to perform job-related functions.'" *Id.*; (quoting *42 U.S.C. § 12112(d)(4)(B)*). Only when an employer obtains information during one or both of these permitted processes, does the ADA require that the employer treat the information as a confidential medical record which collected and maintained on separate forms and in separate medical files. 42 U.S.C. § 12112(d)(4)(C); *see Wiggins,* 451 F. Supp. 2d at 801 (E.D. Va. 2006); *see also Heston v. Underwriters Laboratories, Inc.,* 297 F. Supp. 2d 840, 845 (M.D. N.C. 2003) (noting that it is only when employers gather medical information pursuant to § 12112(d)(4) that the duty of confidentiality is triggered). Defendants did not seek medical information from Plaintiff in this case and Plaintiff does not allege that they did.

Where information is voluntarily disclosed to the employer, the Courts have found no violation of the ADA in failing to keep the information segregated in a separate file and confidential. In *Wiggins v. DaVita Tidewater, LLC,* the Plaintiff alleged that her employer violated by the ADA by sharing her confidential medical information with her co-workers and patients. 451 F.Supp. 2d 789, 802 (E.D. Va. 2006). The Court agreed with Defendants that the information shared with Plaintiff's supervisor was voluntarily disclosed to the Defendant employer and that it was not obtained pursuant to an employer mandated medical examination or

in response to any employer inquiry. *Id.* at 792  Therefore, it was not covered by § 12112(d). *Id.* at 803.

Similar to the factual situations presented in *Rohan* and *Wiggins,* the information Ms. Tucker placed in the Plaintiff's personnel file  was not obtained pursuant to § 12122(d)(4). As such, it was not confidential medical information which necessitated the Defendants' maintaining that information in a separate medical file.  The Defendants' did not gather information about Plaintiff's purported disability by making inquiries into Plaintiff's ability to perform job-related functions. Nor did the Defendants' conduct a voluntary medical examination, including voluntarily obtaining Plaintiff's medical history, as part of an employee health program.  Moreover, there has been no allegation that the confidentiality of the note was ever breached, in any case, no matter where it was kept.

The only allegation made by Plaintiff is that on or about May 5, 2009, the Plaintiff went to one of her supervisors, Debbie Excell, and volunteered information about her purported disability telling Ms. Excell that she was not feeling healthy at the front counter.  DE -76, p 3, ¶ 2; Jacobs Dep p 83, 160-161; Excell Dep p 45-46.  During that conversation, Plaintiff shared with Excell that she had been on medication in college for social issues and that she might have to go back to the doctor.  Jacobs Dep pp 82-84; 160-161; Excell Dep pp 45-46.  Plaintiff shared with Excell that she was concerned that it would reflect badly [on her] if people saw that she was nervous.  DE-76, p 3, ¶ 2; Jacobs Dep pp 82-84; 160-161; Excell Dep pp 45-46.  Later, Excell relayed information the Plaintiff shared with her to Brenda Tucker during a telephone conversation.  Tucker Dep pp 75, 77; Excell Dep p 50.  Tucker wrote down parts of their telephone conversation and had her hand-written note placed in Plaintiff's personnel file. DE-76, p. 6, ¶ 2; Tucker Dep pp 75, 77; Excell Dep p 50; Ex. 11; Pl. Ex 5.

Clearly, the medical information on the note that Ms. Tucker placed the plaintiff's personnel file was not obtained pursuant to § 12112(d)(4). Since it wasn't obtained via one of the two permissible ways to obtain medical information, then the confidentiality provisions of the ADA regarding medical information were not triggered. As such, the Defendants did not engage in a per se violation of the ADA and Plaintiffs request for judgment as a matter of law as to that action must be denied.

## II. PLAINTIFF DOES NOT DISPUTE THAT BRENDA TUCKER'S DECISION TO TERMINATE HER WAS MADE BEFORE TUCKER KNEW SHE HAD REQUESTED AN "ACCOMMODATION."

Even according to Plaintiff's version of the facts, supplemented with the undisputed facts brought forth by Defendants, there is no evidence that the decision to terminate Plaintiff was because of her social anxiety disorder. Brenda Tucker wanted to terminate Plaintiff in March or April 2009, but was persuaded by Assistant Clerk Melissa Griffin to let Griffin continue work with her. Tucker Dep pp 78, 190; Griffin Dep pp 50, 57. Griffin was allowed the opportunity to work with Plaintiff and Plaintiff was allowed to keep her job, but she never became sufficiently more proficient at getting along with her co-workers or microfilming efficiently or staying alert on the job to justify Tucker overlooking the reports that Plaintiff was sleeping at work by Alice Radewicz in early September while Tucker was out of the office on leave. Tucker's testimony that she resolved while out of the office to dismiss Plaintiff when she returned has not been refuted by Plaintiff. Plaintiff's efforts to show that that reason was pretext are weak at best.

Plaintiff's argument that Tucker's rationale for firing her was pretext and was not the cumulative result of her performance deficiencies which came to a head in early September is that Plaintiff's performance file does not reflect Plaintiff's performance issues. Indeed, Tucker did not place written notes in Plaintiff's personnel file regarding issues she either witnessed first-

6

hand involving Plaintiff or heard about from other supervisors or employees. However, this fact is not dispositive. Tucker testified that it was not her practice to write her employees up. Tucker Dep p 139. Furthermore, contrary to Plaintiff's reliance on the absence of a performance review to support their contention Plaintiff was qualified at time she was terminated, Tucker's testimony reveals that Plaintiff was not employed long enough to receive a yearly performance evaluation. Tucker Dep p. 140.

While Plaintiff's personnel file doesn't reveal documented performance issues, the plaintiff's own testimony reveals that she was made aware of her deficiencies by Tucker and her supervisors. Plaintiff testified that in either late April or early May that Tucker told Plaintiff she was taking too long to microfilm, that this warning was Plaintiff's last chance, and that Tucker considered Plaintiff to be untruthful. Tucker Dep pp 60, 144; Ke

As to the notes that Tucker scribbled on Plaintiff's email asking for an accommodation and Tucker's need to explain Plaintiff's termination, nothing about Tucker writing notes on the email suggests in any way that she was motivated by the email to terminate Plaintiff, especially where the testimony was clear that Tucker made that decision while she was out of the office on leave. Tucker Dep p 90:3-13. Additionally, Tucker scribbled the notes on Plaintiff's email after she terminated Plaintiff. Tucker Dep p 111: 8-11. In fact, the fact that Plaintiff surreptitiously taped Tucker while terminating her is persuasive evidence that Plaintiff suspected that she was going to be terminated and that she had attempted to set Tucker up for an ADA claim by sending the email asking for an accommodation while Tucker was out of the office. The transcript of the tape shows that Tucker terminated her for her inability to get the job done in an efficient manner. Ex. 37; Pl. Exs. 7, 8.

Clerk Tucker clearly heard Plaintiff's request for an accommodation at the beginning of

the meeting, originally designed for the purpose of terminating Plaintiff, but which Plaintiff attempted to derail by bringing up the email asking for accommodation. Ex. 37; Pl. Exs. 7, 8. However, Clerk Tucker clearly reasoned that moving Plaintiff off the front desk would only put her in positions (microfilming, away from public view) that would exacerbate Plaintiff's efficiency and performance problems of sleeping and microfilming slowly. The accommodation proposed by Plaintiff would not cure Plaintiff of the performance problems identified by Clerk Tucker as the reason not to continue to employ Plaintiff.

In the transcript, it is clear that Clerk Tucker simply found that Plaintiff was not getting the job and not performing efficiently enough in all of her duties. Plaintiff confirmed that all she sought was to "be moved." Ex. 37; Pl. Exs. 7, 8. Clerk Tucker concluded that moving Plaintiff would not make Plaintiff become more efficient or "get" (i.e., understand the job duties) any better. And at no time during her tenure did Plaintiff ever identify any performance problems that would be mitigated by her not working the front desk.

Plaintiff also argues that several cases cited by Defendants are pre-ADAAA cases. The fact that they are pre-ADAAA would only be relevant if Defendants' were relying on an argument that Plaintiff's disability was not disabled. For the sake of summary judgment, Defendants have conceded that Plaintiff had a disability.

Not surprisingly, Plaintiffs' brief is long on her version of the facts and short on any applicable law. The only substantive case cited by Plaintiff, *Feldman v. Law Enforcement Assocs.Corp.*, 779 F. Supp. 2d 472 (E.D. N.C. 2011), deals with the issue of whether the disability substantially limits a major life activity. However, again, the case would only be relevant is Defendants were arguing that Plaintiff's condition is not a disability because it does not affect a major life activity. Other than *Feldman,* Plaintiff provides only snippets of

boilerplate from other cases and discusses no facts in any case that provides any precedential support for her position that she adequately put Defendants on notice of her request for accommodation for her alleged disability ***prior*** to the decision being made to terminate her. The fact that the termination was delayed until Tucker could return to the office is immaterial. It is the intent of the decision maker that is at issue.

As the Fourth Circuit has noted an "unfair" employment decision and a decision actionable under the anti-discrimination laws are distinct. *Autry v. North Carolina Department of Human Resources*, 820 F.2d 1384, 1386 (4th Cir. 1987). In *Autry*, a black woman brought suit who failed to receive a promotion for which she met the minimum qualifications. The trial court found that a case of racial discrimination was not proven by showing that friendship or politics entered into the promotion decision. This court affirmed on the basis that it was plaintiff's burden to prove that "she was not promoted because of her race, not that she was a member of the black race and was not promoted." *See also Holder v. City of Raleigh,* 867 F.2d 823, 827 (4th Cir. 1989) (real reason why Plaintiff might not have been hired might have been nepotism, but not discrimination). Likewise, here, perhaps Clerk Tucker disliked Plaintiff because she had a run-in with Tucker's niece. Or perhaps Plaintiff's termination came without any sufficient written performance evaluations. Plaintiff's termination could be unfair for any number of reasons, so long as those reasons were because she had a disability and had asked for an accommodation. There is no evidence that Clerk Tucker terminated Plaintiff either because she had a disability or because she asked for an accommodation.

## CONCLUSION

For the foregoing reason, Defendants remain entitled to judgment as a matter of law because the shows that there are no genuine issues of material fact.

9

Respectfully submitted, this the 4th day of November, 2012.

ROY COOPER
Attorney General


/s/ Valerie L. Bateman
Special Deputy Attorney General
North Carolina State Bar No. 13417
Email: vbatemen@ncdoj.gov


/s/ Kathryn Shields
Associate Attorney
North Carolina State Bar No. 43200
North Carolina Department of Justice
P.O. Box 629
Raleigh, NC 27602
Telephone: (919) 716-6800
Facsimile: (919) 716-6755
Email: kshields@ncdoj.gov
Attorneys for Defendants

Case 7:11-cv-00169-BO   Document 79   Filed 12/04/12   Page 10 of 11

CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed the foregoing

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY

JUDGMENT with the Clerk of Court using the CM/ECF system, which will send notification of

such filing to counsel for the plaintiff, Vanessa K. Lucas, Lisa Grafstein, and A. Mercedes

Restucha-Klem.

> Vanessa K. Lucas
> N.C. State Bar No. 33582
> Edelstein & Payne
> Post Office Box 28186
> Raleigh, N.C. 27611
> Telephone: 919-828-1456
> Fax: 919-828-4869
> vanessa@edelsteinpayne.com
>
> Lisa Grafstein
> N.C. State Bar No. 22076
> lisa.grafstein@disabilityrightsnc.org
> A. Mercedes Restucha-Klem
> N.C. State Bar No. 40018
> mercedes.restucha@disabilityrightsnc.org
> Disability Rights North Carolina
> 2626 Glenwood Ave., Suite 550
> Raleigh, N.C. 27608
> Telephone: 919-856-2195
> Fax: 919-856-2424

This the 4th day of November, 2012.

/s/ Valerie L. Bateman.
Special Deputy Attorney General

/s/ Kathryn H. Shields
Associate Attorney General