IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No: 7:11-CV-169-BO

| | |
|---|---|
| CHRISTINA LYNN JACOBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| N.C. ADMINISTRATIVE OFFICE ) | |
| OF THE COURTS, and ) | **ORDER** |
| JAN KENNEDY in her official ) | |
| capacity as NEW HANOVER ) | |
| COUNTY CLERK OF ) | |
| SUPERIOR COURT, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the Court on the defendants' motion for summary judgment [DE 38]. For the reasons stated herein, the defendants' motion is GRANTED.

BACKGROUND

Plaintiff was hired by Hanover County superior court's office of the clerk on January 7, 2009. Plaintiff was an office assistant and her duties consisted of scanning files onto microfilm and filing. On February 3, 2009, the plaintiff was promoted to a deputy clerk position. She worked as one of approximately 27 deputy clerks. At first, the plaintiff's duties were the same as those she had performed as an office assistant, but after some time she began training to work at the front desk. Plaintiff was given extensive training, but she sometimes made mistakes on the job. For example, she once informed a woman that she had a warrant out for her arrest when she really only had a pending court date. The plaintiff also had trouble issuing search warrants

properly. Additionally, on days that the plaintiff was assigned to microfilm she often took much longer than expected to perform her duties. Brenda Tucker informed the plaintiff that it took her too long to microfilm, which made it difficult for others to complete their own work as they were frequently covering for the plaintiff.

When the plaintiff was assigned to work the front counter she sometimes wandered away from her work leaving her co-workers wondering where she had gone. When the plaintiff was working at her cubicle to the rear of her office, co-workers observed her with her head down on the desk several times. In general, her demeanor created problems in the office – she was often argumentative when being told how to do a certain task. At one point, the plaintiff had what was described as a "melt-down" with a co-worker. This melt-down caused a disruption in the office and was in plain view of clerk's office patrons. Plaintiff was repeatedly approached about these performance problems. But they continued. Perhaps the most egregious example of the plaintiff's poor performance was when she showed a woman a list of the jurors who convicted her brother of murder and subsequently lied to supervisors about doing so.

In April or May of 2009 the plaintiff told Debra Excell that she was having social issues and was nervous about working at the front counter. Ms. Excell explained that it was normal to feel nervous at the front desk and encouraged Ms. Jacobs after she said she had thought about talking to her doctor about the problem. The plaintiff did not tell anyone she was disabled, nor did she request an accommodation. Sometime thereafter, Tucker received a call from Ms. Excell stating that the plaintiff was absent from work. During this call, Ms. Excell relayed to Ms. Tucker her prior conversation with the plaintiff and Ms. Tucker made a note of it. Plaintiff did not follow up on her alleged anxiety issues until September.

2

In early September Ms. Tucker left for vacation and did not return to the office until September 29, 2009. After Ms. Tucker left for vacation, the plaintiff sent an email to Ms. Excell, Melissa Griffin, and Jan Kennedy that stated that she had a disability and needed an accommodation. The email recipients replied and stated they were unable to respond to such a request until Ms. Tucker returned. During her vacation, Ms. Tucker had been contacted twice by her assistant regarding Ms. Jacobs falling asleep at the microfilm machine. During those conversations with her assistant, Ms. Tucker explained that she would solve the problem with plaintiff when she returned. Subsequently, the plaintiff forwarded her accommodation request to Ms. Tucker.

On September 17, 2009, the plaintiff was absent from work and had not received prior permission to be out that day. Throughout the remainder of Ms. Tucker's vacation, the plaintiff was often absent. When Ms. Tucker returned from vacation, she met with the plaintiff on September 29th. During this meeting it was evident that Ms. Tucker had not been made aware of the plaintiff's request for an accommodation. In that meeting Ms. Tucker terminated the plaintiff explaining that her performance had not been sufficient.

Dr. George P. Corvin prepared a forensic psychiatric evaluation [DE 41] of plaintiff by assessing her medical records and other documents provided in discovery – this was done in lieu of examining the plaintiff personally because she refused to submit to such an evaluation. Dr. Corvin concluded:

> Ms. Jacobs' medical and mental health records, although noting her history of Social Anxiety Disorder, do not in and of themselves describe symptoms sufficient to warrant such a diagnosis. . . [H]er medical records during the period of time encompassing her employment at New hanover County contain little evidence that Ms. Jacobs was experiencing clinically significant problems with anxiety (work related or otherwise). These same records reveal little focus on treatment of such an anxiety disorder if it did in fact exist. . .

3

On August 18, 2011, plaintiff filed a pro se complaint alleging employment discrimination. After obtaining counsel, plaintiff filed an amended complaint on March 12, 2012. Plaintiff's complaint alleged the following causes of action: (1) discrimination and retaliation under the Americans with Disabilities Act (ADA); (2) violating the ADA by commingling the plaintiff's medical data with her personnel file; (3) failure to provide a reasonable accommodation under the ADA; (4) discrimination and retaliation under the Rehabilitation Act; and (5) wrongful discharge in violation of public policy. The defendants now seek summary judgment as to all claims presented by the plaintiff.

## DISCUSSION

I. SUMMARY JUDGMENT STANDARD.

A motion for summary judgment shall not be granted unless there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the lack of material factual dispute, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmovant. *Matsushita Elc. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Conclusory allegations are not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

II. DISCRIMINATION AND RETALIATION UNDER THE ADA.

In count 1 of her amended complaint the plaintiff alleged that the defendants discriminated and retaliated against her in violation of the ADA. In count 3 of her amended complaint the plaintiff alleged that the defendant failed to provide her with a reasonable

4

accommodation under the ADA. The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . the hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a). Where, as here, there is no direct evidence of discrimination, the Court follows the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 58 (4th Cir. 1995). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant to proffer a legitimate, non-discriminatory explanation for its actions. If the defendant succeeds, the plaintiff may avoid summary judgment by showing that the asserted justifications were merely pretextual. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

In order to establish a prima facie discriminatory discharge case under the ADA, a plaintiff must show "by a preponderance of the evidence that (1) she was in the protected class; (2) she was discharged; (3) at the time of the discharge, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Ennis*, 53, F.3d at 58 (4th Cir. 1995).

In order to establish a prima facie retaliatory discharge claim under the ADA, the Court also uses the *McDonnell Douglas* framework and a plaintiff must show: (1) that she engaged in a protected activity; (2) that he employer took an adverse action against her; and (3) that a causal connection existed between the protected activity and the adverse action. *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001).

In considering a claim for failure to accommodate under the ADA, the Court does not use the *McDonnell Douglas* framework. Instead, in order to establish a prima facie case the plaintiff

5

must show that "she is a qualified individual with a disability, [and] must show that the employer was aware of her disability and still failed to reasonably accommodate it." *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001)(citation omitted).

Here, the plaintiff alleged that was disabled by her social anxiety disorder. The ADA defines "disability as a physical or mental impairment that substantially limits one or more of the major life activities of an individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(2). This record establishes that the plaintiff does not suffer from a "disability as defined in § 12102. Dr. Corvin's report and the plaintiff's behavior as work strongly support this finding. Neither demonstrates that the plaintiff had an alleged impairment that interfered with a major life activity. As the plaintiff was not disabled, she has not stated a claim for wrongful discharge or failure to accommodate under the ADA and summary judgment on those claims is properly granted in favor of the defendant.

Despite the court's finding that the plaintiff is not disabled that does not foreclose the plaintiff's ability to allege a claim for retaliation. However, summary judgment on that claim is also granted in favor of the defendant for different reasons. First, there is no evidence that Ms. Tucker knew that the plaintiff had requested an accommodation at the time she made the decision to terminate her. As such there is no causal connection between the plaintiff's protected activity – requesting an accommodation – and her termination.

III.  COMMINGLING OF MEDICAL AND PERSONNEL RECORDS.

In count 2 of her amended complaint the plaintiff alleged that the defendants violated the ADA by commingling her medical records with her personnel file. Pursuant to 42 U.S.C. § 12112(d)(3), medical information obtained by employers and "regarding the medical condition or history of the applicant" must be "maintained on separate forms and in separate medical files

6

and [] treated as a confidential medical record." This section applies to medical data that is obtained after an offer of employment has been made, but before the applicant begins work. *See Wiggins v. DaVita Tidewater, LLC*, 451 F.Supp.2d 789, 801 (E.D.Va. 2006). Where information is voluntarily disclosed to the employer, § 12112(d) does not apply. *Id.*

Here, the medical information at issue is a handwritten transcription of information provided by the plaintiff. [DE 74-5] As such, it is apparent to the Court that § 12112(d) does not apply and it is proper to grant summary judgment in favor of the defendants on this claim.

IV. DISCRIMINATION AND RETALIATION IN VIOLATION OF SECTION 504 OF THE REHABILITATION ACT.

In count 4 of her amended complaint, the plaintiff alleged that she was subject to discrimination and retaliation in violation of Section 504 of the Rehabilitation Act. Generally, the interpretation of the ADA and section 504 of the Rehabilitation Act is to be coordinated in order to prevent inconsistent requirements under the two statutes. *Baird v. Rose*, 192 F.3d 462 (1999). Despite the similarity between the two statues and their respective applications, stating a claim under the Rehabilitation Act is more difficult as that act requires the plaintiff to show that "solely by reason of her or his disability" she was discriminated against. 29 U.S.C. § 794(a). Under the ADA, a plaintiff need only show that the discrimination was "by reason of such disability." 42 U.S.C. § 12132 and 42 U.S.C. § 12112. For the reasons stated above, the plaintiff has failed to state a claim under the ADA. Likewise, the plaintiff has failed to establish a prima facie case of a violation of Section 504 as against the defendant. As such, it is proper to grant summary judgment in favor the defendant on this claim.

V. WRONGFUL DISCHARGE.

In count 5 of her amended complaint, the plaintiff alleged that she was wrongfully discharged in violation of public policy. The plaintiff alleged that her termination violated the

7

state's public policy as set forth in N.C.G.S. § 168A.[1] North Carolina is an at-will employment state, but it has recognized narrow exceptions to the presumption that an employment relationship is terminable at the will of either party. *See Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 125-26 (N.C. Ct. App. 1986). For example, if an employee has properly alleged that she was discharged in violation of a specific public policy of the State of North Carolina, such discharge is actionable. *See id.*; *Coman v. Thomas Mfg. Co.*, 381 S.E.2d 445 (1989). Importantly, this cause of action is strictly limited to wrongful discharge. *See Hughes v. Bledsoe*, 48 F.3d 1376, 1383-84 (4th Cir. 1995).

In order to state a cognizable claim for wrongful discharge in violation of North Carolina public policy, the plaintiff must allege (1) that her employer actually discharged her; and (2) that the discharge violated a specific North Carolina public policy or that the defendant encouraged the plaintiff to violate a law that might result in potential harm to the public. *Gillis v. Montgomery Cnty. Sheriff's Dep't*, 663 S.E.2d 447, 449 (N.C. Ct.App. 2008).

Here, the plaintiff has alleged that the defendant violated the public policy of North Carolina as it is set forth in the North Carolina Persons with Disabilities Protection Act. N.C.G.S. 168A. As discussed above the Court has found that the plaintiff is not disabled. As such, the defendants did not violate North Carolina's public policy of prohibiting disability-based discrimination by firing the plaintiff. As such, summary judgment in favor of the defendant is properly granted on this claim.

---

[1] Incorrectly cited as N.C. Gen Stat § 163 A in the plaintiff's amended complaint.

8

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED. As there are no live claims remaining in this matter, the CLERK IS DIRECTED to close the file.

SO ORDERED.

This the 30 day of August, 2013.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE